Andrew D. Wright, #8857
Jennifer R. Carrizal, #10116
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
Telephone:  (801) 532-7080
Facsimile:   (801) 323-2037
awright@strongandhanni.com
jcarrizal@strongandhanni.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| PRIME INSURANCE COMPANY <br><br> Plaintiff, <br><br> v. <br><br> CHILL TRANSPORTATION, LLC, <br><br> Defendant. | **COMPLAINT FOR DECLARATORY RELIEF** <br><br> Case No: <br><br> Judge: |

Plaintiff Prime Insurance Company ("Prime"), by and through counsel, hereby complains and alleges against Defendant Chill Transportation, LLC ("Chill Transportation") as follows:

## PARTIES

1. Prime is an insurance company incorporated under the laws of the State of Illinois, with its principal place of business in Utah.

2. Upon information and belief, Chill Transportation is a California limited liability company with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff on one hand and Defendant on the other, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant pursuant to Utah's Long-Arm Statute, U.C.A. § 78B-3-205. Defendant consented to personal jurisdiction in the State of Utah in the contractual agreement it entered into with Plaintiff (an entity whose principal place of business is located in the State of Utah), and this action arises out of and relates to said agreements, which are governed by Utah law.

5. Specifically, in Policy No. SC1011590, which was issued in Utah, Plaintiff and Defendant contractually agreed to submit to jurisdiction and venue in any court within the State of Utah and have agreed that Utah law will be applied.

### SECTION XII – GOVERNING LAW

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

. . . .

### SECTION XIV – CONSENT TO EXCLUSIVE JURISDICTION

The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management, and claims services within the State of Utah. The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah. The Insured acknowledges that by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy. In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising

between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

(See Certified Policy, p. 0038, attached hereto as Exhibit 1.)

6. By entered into the Policy, Defendant acknowledged that Plaintiff conducts its activities within the State of Utah and transacts its primary business operations within Utah.

7. With that understanding, Defendant purposefully directed its actions to procure services within the State of Utah and made continuous and systematic requests for services within Utah.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## GENERAL FACTUAL ALLEGATIONS

9. Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

**A. The Policy:**

10. Prime issued commercial auto insurance coverage to Chill Transportation in the form of Policy No. SC1011590 with effective dates of coverage of January 22, 2021 to January 22, 2022 (the "Policy"). (See Certified Policy, Ex. 1.)

11. The Policy sets forth the following relevant requirements with regards to coverage of a claim.

### COMMERCIAL BUSINESS AUTO INSURANCE POLICY

### PCA-00-01

**THIS CLAIMS-MADE COMMERCIAL BUSINESS AUTO INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement between the Named Insured and the Insurer, and as such it may differ significantly from liability policies offered by other insurance companies. As a claims made insurance policy, this Policy contains very strict claim reporting requirements which must be followed as conditions precedent to**

**coverage. The terms of this Policy are contractual and are not merely recitals and all information supplied by any Insured to obtain coverage, constitute warranties of the Insured to the Insurer.**

. . . .

**Coverage is strictly limited to scheduled Autos operated by scheduled drivers and operations and at those locations listed, described, and defined herein. Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.**

(Certified Policy, p. 0012, Ex. 1) (bold in the original).

    12.    Next, the Policy includes the following additional information pertaining to coverage.

## SECTION I – LIABILITY COVERAGE

A.    Insuring Agreement

    1.    Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies if caused by an Accident and resulting from the ownership, maintenance, or use of a Scheduled Auto as identified in the Policy, on the Declarations or any Endorsement . . . .

(Certified Policy, p. 0012, Ex. 1.)

    13.    Additionally, the Policy includes the following relevant liability exclusions.

## SECTION I – LIABILITY COVERAGE
. . . .

B.    Liability Exclusions

. . . .

This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for any of the following:

. . . .

    18.    Any Claim related to, caused by, or arising from Pollution. This exclusion applies to any Pollution arising out of the actual, or threatened spilling, discharge, dispersal, seepage, migration, release, or escape of Pollutants at any time

4

. . . .

19. Any Claim related to, caused by, or arising from Hazardous Materials. This exclusion applied to any Hazardous Materials arising out of the actual, alleged, or threatened spilling, discharge, dispersal, seepage, migration, release or escape of Hazardous Materials

. . . .

20. Bodily Injury or Property Damage arising out of your willful violation of a penal statute or ordinance.

. . . .

24. Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award, or the return or restitution of legal fees, costs, and expenses. Claims for or awards against any Insured for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award are not covered by the Policy regardless of whether they are demanded or awarded based on the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable.

(Certified Policy, pp. 0012-0018, Ex. 1.)

14. Additionally, the Policy includes the following relevant definitions.

### SECTION VIII – DEFINITIONS

. . . .

K. "Damages" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Accident, but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, punitive, exemplary, treble charges, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

. . . .

N. "Hazardous Materials" means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any byproduct thereof.

. . . .

U. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous

Materials or an any other waste, including materials to be recycled, reconditions, or reclaimed.

(Certified Policy, pp. 0031-0033, Ex. 1.)

15.  An MCS-90 Endorsement was issued in conjunction with Chill Transportation's qualifying operations. That endorsement provides as follows in pertinent part.

### FORM MCS-90
. . . .

### DEFINITIONS AS USED IN THIS ENDORSEMENT
. . . .

**Environmental Restoration** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, or any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**Public Liability** means liability for bodily injury, property damage, and environmental restoration.

. . . .

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections of 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insurer for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(Certified Policy, pp. 0054-0056, Ex. 1.)

### B.   The Incident:

16.   This matter arises out of an incident that occurred on August 8, 2021.

17.   On that date, James Slayder was operating a tractor and trailer for Chill Transportation in Toppenish, Washington.

18.   An incident occurred and the tractor and trailer rolled into a marsh near the Yakama Indian Reservation and Toppenish Creek.

19.   Oil, fuel, and other fluids from the tractor and purportedly leaked into Toppenish Creek and nearby wetlands.

20.   On February 14, 2023, the United States Environmental Protection Agency ("EPA") filed a complaint against Chill Transportation in relation to the August 8, 2021 incident (the "EPA claim").

21.   The EPA alleges Chill Transportation violated various federal statutes and seeks to impose fines and penalties against Chill Transportation.  (See EPA Complaint, attached hereto as Exhibit 2.)

22.   Specifically, the EPA Complaint alleges Chill Transportation *"violated Section 311(b)(3) of the CWA, 33 U.S.C. §1321(b)(3), by discharging oil into navigable waters and adjoining shorelines in harmful quantities"* and *"violated Section 301(a) of the CWA, 33 U.S.C. § 1311 (a), by adding pollutants to navigable waters from a point source without a permit."*  (EPA Complaint, ¶¶ 3.19 and 3.27, Ex. 2.)

23.   Based on the alleged statutory violations, the EPA seeks to impose "civil penalties" against Chill Transportation.

24. Specifically, the EPA alleges Chill Transportation *"is liable for the administrative assessment of civil penalties for violations in an amount not to exceed $22,324 per day for each day during which the violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), occurred, up to a maximum of $279,036."* (EPA Complaint, ¶ 4.1, Ex. 2.)

25. In the alternative, the EPA alleges Chill Transportation *"is liable for the administrative assessment of civil penalties for violations in an amount not to exceed $25,847 per day for each day during which the violations of Sections 301(a) of the CWA, 33 U.S.C. § 1311(a), occurred, up to the maximum of $323,081, pursuant to Section 309(g)(2)(B) of the CWA, 33 U.S.C. § 1319(g)(2)(B), and 40 C.F.R. Part 19."* (EPA Complaint, ¶ 4.3, Ex. 2.)

26. The EPA Complaint proposes an "administrative penalty" be imposed against Chill Transportation. Specifically, the EPA Complaint states:

### IV.   PROPOSED PENALTY

. . . . .

In accordance with 40 C.F.R. § 22.14(a)(4)(ii), Complainant proposes a Final Order be issued to Respondent assessing an administrative penalty in an amount not to exceed $279,036 for the violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), taking into account the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require as outlines in Section 311(b)(8) of the CWA, 33 U.S.C. § 1321(b)(8). In the alternative, Complainant proposes that a Final Order be issued to Respondent assessing an administrative penalty in an amount not to exceed $323,081 for the violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), taking into account the nature, circumstances, extent and gravity of the violations, and with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violations, and such other matters as justice may require as outlines in Section 309(g)(3) of the CWA, 33 U.S.C. § 1319(g)(3).

(EPA Complaint, ¶ 4.4, Ex. 2.)

**C.     The Insurance Claim:**

27.    The matter was reported to Prime on or about August 9, 2021.

28.    Chill Transportation seeks coverage under the Policy for the EPA claim.

29.    After conducting an investigation, Prime determined the issues discussed below impact coverage for the EPA claim. In coverage letters dated August 19, 2021 and June 29, 2023, Prime informed Chill Transportation of the coverage issues. (See Coverage Letter dated August 19, 2021, attached hereto as Exhibit 3 and Coverage Letter dated June 29, 2023, attached hereto as Exhibit 4.)

**CLAIM FOR DECLARATORY RELIEF**
**(No Coverage Under the Policy and No Obligations are Owed Under the MCS-90)**

30.    Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

31.    An actual dispute and controversy has arisen between Plaintiff and Defendant regarding whether there is coverage available under the Policy for the EPA claim.

32.    As set forth above, the clear and unambiguous provisions of the Policy state there is no coverage for claims relating to or arising from Pollution.

33.    Specifically, pursuant to Exclusion No. 18, there is no coverage under the Policy for *"Any Claim related to, caused by, or arising from Pollution . . . ."*

34.    The Policy defines "Pollution" as *"any solid, liquid, gaseous, or thermal irritant or contaminant"*.

35.    The EPA claim is based on the release of oil, fuel, and other mechanical fluids into Toppenish Creek and the adjacent wetlands.

36.    Oil, fuel, and mechanical fluids fit within the Policy's definition of "Pollution."

37. Accordingly, the EPA claim relates to and arises from Pollution, Exclusion No. 18 applies, and there is no coverage under the Policy for the EPA claim.

38. As set forth above, the clear and unambiguous provisions of the Policy state there is no coverage for claims relating to or arising from Hazardous Materials.

39. Specifically, pursuant to Exclusion No. 19, there is no coverage for *"Any Claim related to, caused by, or arising from Hazardous Materials."*

40. The Policy defines "Hazardous Materials" as *"any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any byproduct thereof."*

41. The EPA claim is based on the release of oil, fuel, and other mechanical fluids into Toppenish Creek and the adjacent wetlands.

42. Oil, fuel, and mechanical fluids fit within the Policy's definition of "Hazardous Materials."

43. Accordingly, the EPA claim relates to and arises from Hazardous Materials, Exclusion No. 19 applies, and there is no coverage under the Policy for the EPA claim.

44. As set forth above, the clear and unambiguous provisions of the Policy state there is no coverage for fines or penalties.

45. Specifically, the Policy's coverage terms state that coverage is limited to: *"Damages in excess of any SIR that [an] Insured is legally obligated to pay because of Bodily Injury or Property Damage . . . caused by an Accident and resulting from the ownership, maintenance, or use of a Scheduled Auto"*.

46. The Policy defines "Damages" as a *"a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Accident"*.

47. The definition of "Damages" specifically excludes *"fines or statutory penalties"*.

48. Additionally, pursuant to Exclusion No. 24, there is no coverage under the Policy for *"Any Claim for . . . fines, statutory penalties . . . whether imposed by law or otherwise"*.

49. The EPA claim does not seek a compensatory sum or monetary judgment.

50. Instead, the EPA claim seeks to imposed fines and penalties against Chill Transportation.

51. Accordingly, pursuant to the Policy's coverage terms and Exclusion No. 24, there is no coverage under the Policy for the EPA claim.

52. As set forth above, the clear and unambiguous provisions of the Policy state there is no coverage for injury or damage arising from an Insured's willful violation of a statute or ordinance.

53. Specifically, pursuant to Exclusion No. 20, there is no coverage under the Policy for injury or damage *"arising out of your willful violation of a penal statute or ordinance."*

54. The EPA claim includes allegations of statutory violation against Chill Transportation.

55. In the event it is determined Chill Transportation committed statutory violations and that such violations were willful, Exclusion No. 20 would apply and there would further be no coverage under the Policy for the EPA claim.

56. As set forth above, the clear and unambiguous provisions of the MCS-90 Endorsement state that obligations under the MCS-90 are limited to final judgments against an insured for public liability.

57. Specifically, the MCS-90 Endorsement obligates Prime to pay *"any final judgment recovered against [Chill Transportation] for public liability"*.

58. The MCS-90 Endorsement defines "public liability" as *"liability for bodily injury, property damage, and environmental restoration."*

59. The MCS-90 Endorsement defines "environmental restoration" as: *"restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, or any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife."*

60. The term "restitution" has a common meaning of restore, repair or return.

61. The EPA claim does not seek recovery for bodily injury or property damage.

62. The EPA claim does not seek to accomplish environmental restoration because it does not demand restitution from Chill Transportation for restoration or repair of the environment.

63. Instead, the EPA seeks to impose fines and penalties against Chill Transportation as punishment for its alleged wrongdoings.

64. Resolution of the EPA claim would not constitute a *"final judgment . . . for public liability."*

65. Accordingly, the MCS-90 Endorsement does not apply and Prime has no obligation to indemnify Chill Transportation in relation to the EPA claim.

66. Based on the foregoing, a judicial determination is necessary and appropriate at this time to determine the respective rights and obligations of Plaintiff and Defendant under the Policy and the MCS-90 Endorsement.

67. Pursuant to Utah Code Ann. § 78B-6-408, Plaintiff requests a declaration from this Court that:

    a. There is no coverage under the Policy for the EPA claim because it relates to and arises from Pollution.

    b. There is no coverage under the Policy for the EPA claim because it relates to and arises from Hazardous Materials.

    c. There is no coverage under the Policy for fines or penalties.

    d. There is no coverage under the Policy for injury or damage arising from an Insured's willful violation of a statute or ordinance.

    e. The MCS-90 Endorsement does not apply and Prime has no obligation to indemnify Chill Transportation in relation to the EPA claim.

    f. As coverage is precluded under the Policy and no obligations are owed under the MCS-90 Endorsement, Prime has no obligation to defend or indemnify Chill Transportation in relation the EPA claim.

    g. As coverage is precluded under the Policy and no obligations are owed under the MCS-90 Endorsement, Chill Transportation does not have any right of recovery against Prime in relation to the EPA claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For a declaration that:

    a. There is no coverage under the Policy for the EPA claim because it relates to and arises from Pollution.

    b. There is no coverage under the Policy for the EPA claim because it relates to and arises from Hazardous Materials.

    c. There is no coverage under the Policy for fines or penalties.

    d. There is no coverage under the Policy for injury or damage arising from an Insured's willful violation of a statute or ordinance.

    e. The MCS-90 Endorsement does not apply and Prime has no obligation to indemnify Chill Transportation in relation to the EPA claim.

    f. As coverage is precluded under the Policy and no obligations are owed under the MCS-90 Endorsement, Prime has no obligation to defend or indemnify Chill Transportation in relation the EPA claim.

    g. As coverage is precluded under the Policy and no obligations are owed under the MCS-90 Endorsement, Chill Transportation does not have any right of recovery against Prime in relation to the EPA claim.

2. For Plaintiff's costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

DATED this 5th day of July, 2023.

              STRONG & HANNI


              By */s/ Andrew D. Wright*
                Andrew D. Wright
                Jennifer R. Carrizal
                *Attorneys for Plaintiff*


Plaintiff's address:
PRIME INSURANCE COMPANY
c/o CLAIMS DIRECT ACCESS
8722 South 300 West
PO Box 4439
Sandy, Utah 84091